746 So.2d 74 (1999)
STATE of Louisiana
v.
Edward K. BURTON & George Simon.
No. 98-KA-0096.
Court of Appeal of Louisiana, Fourth Circuit.
September 1, 1999.
Rehearing Denied September 30, 1999.
*76 Harry F. Connick, District Attorney, Charles E.F. Heuer, Assistant District Attorney, New Orleans, Counsel for State/Appellee.
Yvonne Chalker, Louisiana Appellate Project, New Orleans, Counsel for Defendants/Appellants.
Court composed of Chief Judge ROBERT J. KLEES, Judge STEVEN R. PLOTKIN, Judge MOON LANDRIEU.
PLOTKIN, Judge.
On August 20, 1997, defendants Edward Burton and George Simon were charged by bill of information with armed robbery, La. R.S. 14:64. They were arraigned on August 25, 1997, and pled not guilty. On September 17, 1997, a twelve-person jury found the defendants guilty as charged. On October 1, 1997, the trial court sentenced Simon to twenty years at hard labor without benefit of parole, probation or suspension of sentence. Simon then filed a motion to reconsider sentence, which the trial court denied. Also on that date, the State filed a multiple bill as to Burton. On October 3, 1997, the trial court found him to be a second offender and sentenced him to sixty years at hard labor without benefit of parole, probation or suspension of sentence. Burton filed a motion to reconsider sentence, which was denied. This appeal followed.

STATEMENT OF FACTS:
Charles Delong testified that at 7:35 a.m. on June 11, 1997, he was on his way to catch the streetcar to work. As he was walking on Second Street towards St. Charles Avenue, the defendants approached him on bicycles, one stopping in front of him (Simon), the other to his side (Burton). Delong asked the men if they were going to rob him, and Simon told Delong to empty his pockets. Delong could see the handle of a gun under the thin shirt Simon was wearing and could in fact discern that the gun was a revolver. Delong told the men they would not rob him if they believed in God. Simon replied that he was Satan.
Delong then gave Simon his money clip containing $12.00. Simon took the money, handed the clip back to the victim, remarked, *77 "I've robbed for less than that," and demanded Delong's wallet. Delong explained there was no money in the wallet, only personal papers, but Simon insisted on inspecting the wallet. After confirming that there was no money in the wallet, Simon returned it to Delong. During the transaction, Burton continually motioned as though he, too, had a gun, although Delong never saw one in his possession.
Immediately after the crime, Delong spoke to his neighbor, Demetrius Brimmer, who had witnessed the robbery and knew the defendants. Delong later identified the men in photographic lineups. Brimmer said he witnessed the crime from about a block away while he was seated in his truck with his girlfriend, Shantell. He saw the two men as they rode by on bicycles. After they passed him, he watched them in his rearview mirror. He saw the men approach Delong, so he exited the truck to see what they were doing. He witnessed an exchange of money "at gunpoint," although he did not actually see the gun. He recognized the men, and Shantell told him their names. He identified Burton in a photographic lineup but could not identify Simon.
Burton's girlfriend, Anetta Tyson, testified that Burton was at her house when the crime occurred. Her uncle, Carey Edwards, also said he saw him there.
Simon testified that he suffered a gunshot wound to the head in 1993, that he was paralyzed, that he can only walk with braces, and that he does not own a bicycle. He denied any involvement in the crime.

ERRORS PATENT:
A review of the record for errors patent reveals none.

BURTON ASSIGNMENT OF ERROR ONE, BURTON PRO SE ASSIGNMENT OF ERROR ONE, SIMON ASSIGNMENT OF ERROR ONE, SIMON PRO SE ASSIGNMENTS OF ERROR ONE AND TWO:
By these assignments, the defendants argue that the State presented insufficient evidence to support their convictions. Particularly, they argue there was insufficient evidence to prove that Simon was armed with a gun, that Burton was a participant in the crime, or that their identities were proven.
The standard for testing the sufficiency of the evidence, as enunciated in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), is whether any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, could have found the elements of the crime proven beyond a reasonable doubt. See also La.C.Cr.P. art. 821. "The reviewing court is to consider the record as a whole and not just the evidence most favorable to the prosecution; and, if rational triers of fact could disagree as to the interpretation of the evidence, the rational decision to convict should be upheld." State v. Ward, 96-1588 pp. 5-6 (La.App. 4 Cir. 3/4/98), 712 So.2d 139, 143, writ denied, 98-1072 (La.10/9/98), 726 So.2d 17. "Additionally, the reviewing court is not called upon to decide whether it believes the witnesses or whether the conviction is contrary to the weight of the evidence." Id. In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient to support a requisite factual conclusion. State v. Thomas, 609 So.2d 1078 (La.App. 2 Cir.1992), writ denied, 617 So.2d 905 (La.1993).
La. R.S. 14:64(A) defines armed robbery as "the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon." Here, Delong testified that the defendants confronted him and that Simon demanded money from him, which he relinquished. Delong testified that a gun was tucked in Simon's waistband, and Delong saw it clearly enough, in fact, to recognize it as a revolver. The jury found Delong to be a credible witness; therefore, his testimony *78 was sufficient to show that Simon was armed with a dangerous weapon at the time of the robbery. State v. Thomas, supra. This court will not disturb the jury's finding.
As to Burton, this court discussed proof of guilt as to a principal in State v. Richardson, 96-2598 p. 7 (La.App. 4 Cir. 12/17/97), 703 So.2d 1371, 1374, writ denied sub nom State ex. rel. Richardson v. State, 98-0228 (La.9/25/98), 726 So.2d 7:
La. R.S. 14:24 provides: "All persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime, are principals." In order to support a defendant's conviction as a principal, the State must show that the defendant had the requisite mental state for the crime. State v. Brooks, 505 So.2d 714 (La.1987), cert. denied, Brooks v. Louisiana, 484 U.S. 947, 108 S.Ct. 337, 98 L.Ed.2d 363 (1987); State v. Hampton, 94-1943 (La. App. 4th Cir.12/27/96), 686 So.2d 1021, writ denied, 97-0166 (La.6/13/97), 695 So.2d 986.
In this case, the jury heard testimony that Burton rode up to the victim alongside Simon. He stopped his bicycle directly next to the victim, thus limiting an avenue of escape. During the robbery, he continually motioned as if he were concealing a gun. Elicited during credible testimony, these facts enabled the jury to find that Burton directly and intentionally aided Simon in taking the victim's money. Burton therefore qualified as a principal to the crime of armed robbery.
As to the issue of identification, Delong identified the defendants in photographic lineups and again at trial. Brimmer knew the defendants from the neighborhood and identified Burton in a photographic lineup. At the least, Delong's credible identifications enabled the jury to conclude that Burton and Simon were the men who robbed him.
In sum, the evidence produced was sufficient to support the convictions. We find these assignments to be without merit.

SIMON ASSIGNMENT OF ERROR TWO:
By this assignment, defendant alleges that the trial court erred in allowing the introduction of other crimes evidence, specifically the statements that he had "robbed for less" than $12.00 and that he was Satan. Prior to trial, defense counsel moved to exclude these statements from the evidence. Simon argues that the trial court erred in admitting the statements because they could have led the jury to believe that he was a career criminal and an evil, immoral person.
Generally, evidence of other crimes, wrongs or acts is inadmissible. However, La. C.E. article 404(B)(1) provides that evidence of other crimes may "be admissible ... when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding."[1] Evidence of other crimes is admissible when it is related to and intertwined with the charged offense to such an extent that the State could not have accurately presented its case without reference to it. State v. Parker, 96-1852 (La.App. 4 Cir. 6/18/97), 696 So.2d 599, writ denied, 97-1953 (La.1/9/98), 705 So.2d 1097; State v. Brewington, 601 So.2d 656 (La.1992).
In this case, the defendant's comment that he was Satan is not evidence of other crimes. Defendant's remark, "I've robbed for less," was an integral part of the act at issue. It was so related to and intertwined with the offense that the State could not have accurately presented its case without reference to it. Even if the *79 State could have excised defendant's comments from Delong's testimony without unduly hindering his recollection of the robbery, the introduction of the evidence was no more than harmless error. Given Delong's identification of both defendants and the jury's unwillingness to believe defendants' testimony that they could not have committed the crime, the verdict rendered was surely unattributable to the statements' introduction. State v. Richardson, 703 So.2d at 1373; State v. Koon, 96-1208 (La.5/20/97), 704 So.2d 756.
This assignment of error is without merit.

BURTON ASSIGNMENT OF ERROR TWO, BURTON PRO SE ASSIGNMENT OF ERROR TWO, SIMON ASSIGNMENT OF ERROR THREE, SIMON PRO SE ASSIGNMENT OF ERROR TWO:
Finally, the defendants argue in these assignments of error that their sentences are excessive as a matter of constitutional law.
Article I, Section 20 of the Louisiana Constitution of 1974 provides, "No law shall subject any person ... to cruel, excessive or unusual punishment." A sentence within statutory limits may nonetheless be constitutionally excessive "if it is grossly out of proportion to the severity of the crime or is nothing more than the purposeless imposition of pain and suffering." State v. Ash, 97-2061 p. 12 (La.App. 4 Cir. 2/10/99), 729 So.2d 664, 670, writ denied, 99-0721 (La.7/2/99), 747 So.2d 15. Generally, a reviewing court must determine whether the trial judge adequately complied with the sentencing guidelines set forth in La.C.Cr.P. art. 894.1 and whether the sentence is warranted in light of the particular circumstances of the case. State v. Egana, 97-0318 (La.App. 4 Cir. 12/3/97), 703 So.2d 223; State v. Quebedeaux, 424 So.2d 1009 (La.1982). If adequate compliance with art. 894.1 is found, the reviewing court must determine whether the sentence is too severe in light of the particular defendant and circumstances of the case, remembering that only the most egregious violators of the offense charged should receive maximum sentences. State v. Ash, supra; State v. Egana, supra.
In this case, the assistant district attorney informed the court at Simon's sentencing hearing that Simon had prior arrests for "shoplifting, criminal mischief, simple criminal damage, simple burglary of a vehicle, gambling, possession of stolen property, concealed weapon, simple robbery, another battery, another possession of a stolen car, another battery, and there are like two or three municipal batteries." The judge then stated:
These are very serious charges, Mr. Simon. This man left his home to go to a job, and you and your partner to come [sic] jack him up for his money. He was shocked that he would be robbed of such a small amount of money. It's a sad day in broad daylight that people can leave their homes to catch the streetcar and thugs ride up and rob them. It's got to stop. We have become prisoners in our own homes in our own city and the only way to stop it is to [put] people like you in jail, do you understand?
As to Burton, he was not originally sentenced; he was sentenced for the first time as a second offender at a multiple bill hearing. After the trial court found him to be a second offender, his first offense having been the possession of stolen property worth more than $500, La. R.S. 14:69, the court stated:
Mr. Burton, I feel the same way about you as I do your co-defendant. Here is a man who left his home on his way to work in the morning, and you and your friend decide to rob him. It's a shame that in this community you can't feel safe to walk across the street to go to work in the morning without having thugs like you ride up on bicycles and stick guns in your face and take the $12 that he had. If you would have had a job like he had and going [sic] to work *80 every day you might not have to rob people. It's not fair to the people in this community to be terrorized, threatened and feel like [sic] they are the prisoners in our society and in our city when they are being terrorized by people like you. The sentencing range in this case is one half of 99 years which is 49 and a half years, that's 109 years.[2] It is the sentence of this Court that you serve 60 years at hard labor in the custody of the Louisiana Department of Corrections, that sentence is without benefit of probation, parole, or suspension of sentence. You will receive credit for time served.
In State v. Goodman, 96-376 (La.App. 3 Cir. 11/6/96), 684 So.2d 58, the court affirmed the defendant's sentence of sixty-six months for unauthorized entry into an inhabited dwelling. As to the trial court's compliance with the requirements of article 894.1, the court of appeals stated, "The court need not refer to every aggravating and mitigating circumstance in order to comply with the article." 684 So.2d at 62. In another case, the reviewing court upheld a sentence of thirty years for a repeat offender convicted of distributing cocaine. See State v. Anderson, 29,282 (La.App. 2 Cir. 6/18/97), 697 So.2d 651. In sentencing the defendant in that case, the trial court considered societal factors as well as the particular circumstances of the defendant. The reviewing court held that a trial court is permitted to consider larger societal concerns in sentencing, as long as the court tailors the sentence to the particular defendant. See id. at 657. In this case, the trial court stated the factual basis for the sentences, as well as the circumstances and factors considered. Therefore, it adequately complied with the guidelines of article 894.1.
Once the reviewing court notes adequate compliance with article 894.1, it may consider whether the sentence is excessive in comparison with sentences imposed by other courts in similar circumstances. A review of other sentences for armed robberies reveals that trial courts impose sentences for armed robbery convictions from as little as seven years to as much as ninety-nine years without great differences in the circumstances of a particular case. The trial court is afforded much discretion; a reviewing court should not set a statutorily proper sentence aside absent a manifest abuse of that discretion. State v. Owens, 30,903 p. 19 (La.App. 2 Cir. 9/25/98), 719 So.2d 610, 612, writ denied, 98-2723 (La.2/5/99), 737 So.2d 747; State v. Square, 433 So.2d 104 (La.1983).
In State v. Davis, 596 So.2d 358 (La. App. 4 Cir.1992), writ denied, 604 So.2d 965 (La.1992), a first offender received three consecutive twenty-year sentences on each of three armed robbery convictions. In State v. Dunns, 441 So.2d 745 (La.1983), the Louisiana Supreme Court upheld a forty-year sentence imposed upon a first felony offender for armed robbery.
Here, Simon brazenly robbed the victim in the light of day as the victim was on his way to work, and he was willing to accept only the small amount of money the victim possessed. Simon faced a maximum of ninety-nine years in prison, and no fewer than five. His sentence of twenty years is certainly not an abuse of discretion under the circumstances of the case.
Burton's sentence presents a more difficult issue. Because of his prior *81 felony conviction and La. R.S. 15:529.1, Burton was subject to a harsher sentence than was Simon. Indeed, as previously noted, Burton faced a possible sentence of forty-nine and one-half years to 198 years. The sixty-year sentence imposed on him is near the lower end of that range.[3] However, it is three times as long as Simon's sentence; and, moreover, it is effectively a life sentence, even though Burton was a less active participant in the crime. He did not threaten the victim, nor was he seen with a weapon, whereas Simon was. Then, too, Burton's prior felony conviction for possession of stolen property was a nonviolent crime, and he has no other history of criminal or violent behavior. For Burton to receive a sentence lower than the statutory minimum of forty-nine and one-half years, however, he would have to provide more evidence of mitigating circumstances than he has provided thus far.
"Since the Habitual Offender Law in its entirety is constitutional, the minimum sentences it imposes upon multiple offenders are also presumed to be constitutional." State v. Johnson, 97-1906 pp. 5-6 (La.3/4/98), 709 So.2d 672, 675. "A court may only depart from the minimum sentence if it finds that there is clear and convincing evidence in the particular case before it which would rebut the presumption of constitutionality." Id. at 676. That is, as noted above, a court must be convinced that the sentence mandated "`makes no measurable contribution to acceptable goals of punishment', or is nothing more than `the purposeful imposition of pain and suffering' and is `grossly out of proportion to the severity of the crime.'" Id. (quoting State v. Dorthey, 623 So.2d at 1280-81); State v. Ash, supra; State v. Young, 94-1636 pp. 5-6 (La.App. 4 Cir. 10/26/95), 663 So.2d 525, 528, writ denied, 95-3010 (La.3/22/96), 669 So.2d 1223 (Plotkin, J., concurring) (the defendant must show that he is "exceptional ... a victim of the legislature's failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case.").
Even where, as here, the defendant's instant or prior crime is nonviolent, that fact alone is insufficient to rebut the presumption that the enhanced sentence is constitutional. State v. Johnson, 709 So.2d at 676; State v. Gass, 31,816, 31,817 (La. App. 2 Cir. 1/20/99), 728 So.2d 896. In Johnson, the defendant was convicted of possession of cocaine and marijuana. He pled guilty to a multiple bill listing three prior felony convictions for illegal possession of stolen things and theft of property valued between $100 and $500  all nonviolent offenses. The trial court departed from the statutory minimum of twenty years and sentenced Johnson to thirty months in prison. The Supreme Court reversed the trial court and required Johnson to serve twenty years, finding no clear and convincing evidence justifying a departure. The court noted that the twenty year sentence contributed "to the sentencing goals of punishment and deterrence." 709 So.2d at 678.
In State v. Jackson, 96-2540 (La.App. 4 Cir. 8/12/98), 718 So.2d 1001, 1002, writ denied, 98-2560 (La.2/26/99), 738 So.2d 1069, this court noted that Johnson, "in essence, precludes a court from ever deviating from the sentences pronounced under the habitual offender statute." In State v. Jackson, the defendant was convicted after shoplifting a $159 jacket. He had two prior convictions for simple burglary and an eighteen year old conviction for simple robbery, which is defined in the sentencing guidelines as a crime of violence. Consequently, as a four-time offender who had once committed a crime of violence, the defendant faced a life sentence under the sentencing guidelines. This court initially vacated the trial court's compelled life sentence and remanded for *82 resentencing.[4] However, after the case was remanded from the Supreme Court, this court vacated its original opinion, thereby affirming defendant's life sentence.
In State v. Hunter, 92-2535 (La.App. 4 Cir. 4/13/95), 654 So.2d 781, writ denied, 95-1217 (La.10/6/95), 661 So.2d 464, this court upheld a ninety-nine year sentence following the defendant's conviction for armed robbery, where the defendant's only prior conviction was for simple burglary. The circumstances in that case were more extreme than the instant ones, as the defendant had used a gun to take a car, with which he began a dangerous, high-speed chase. However, the defendant's sentence was also more severe than the sentence at issue. See also State v. Stepp, 28,868 (La. App. 2 Cir. 12/11/96), 686 So.2d 76, writ denied, 97-0410 (La.6/30/97), 696 So.2d 1006 (affirming ninety-nine year sentence following defendant's second armed robbery conviction, where second conviction resulted from defendant's participation as a principal).
In light of the brash and potentially dangerous nature of the instant crime and Burton's failure to demonstrate any mitigating circumstances, this court cannot hold that the trial court abused its discretion in sentencing Burton to sixty years in prison, especially since the aforementioned jurisprudence would apparently have forbidden a departure below the statutory minimum of forty-nine and one-half years. Burton has cited no contrary, mitigating authority. In sum, the defendants' sentences are not unconstitutionally excessive.
Finally, Burton argues that the trial court violated La. R.S. 15:529.1(D)(3) by sentencing him as a multiple offender without first imposing an underlying sentence. However, the statute merely provides that the court "shall vacate the previous sentence if already imposed ..." (emphasis added). The statute thus prevents an offender from having two sentences: one for the most recent conviction by itself and one for that conviction as enhanced by the statute's primary provisions. Contrary to Burton's contention, the plain language of the statute does not require that a sentence for the most recent conviction be imposed before the sentence required for a multiple offender is imposed.
This assignment of error is also without merit. Accordingly, for the aforementioned reasons, the defendants' convictions and sentences are affirmed.
AFFIRMED.
NOTES
[1] The final phrase replaces the term "res gestae" as provided in former La. R.S. 15:447-448.
[2] The significance of "109 years" is unclear. Under La. R.S. 15:529.1(A)(1)(a), "[i]f the second felony is such that upon a first conviction the offender would be punishable by imprisonment for any term less than his natural life, then the sentence to imprisonment shall be for a determinate term not less than one-half the longest term and not more than twice the longest term prescribed for a first conviction." Under La. R.S. 14:64(B), a first conviction for armed robbery warrants a prison term of five to ninety-nine years. Thus, where an armed robbery is a second conviction, the sentencing range is from forty-nine and one-half years to 198 years. The trial court's sentence of sixty years for Burton is clearly within that range.
[3] Of course, even a minimum sentence may be constitutionally excessive under the circumstances of a particular case. State v. Dorthey, 623 So.2d 1276 (La.1993).
[4] The trial judge originally imposed a sentence of twenty years before realizing a life sentence was required.